**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DWAYNE HOWARD JENKINS | : | **HON. NOEL L. HILLMAN** |
| Petitioner, | : | Civil No. 11-2236 (NLH) |
| v. | : |  |
| DONNA ZICKEFOOSE, | : | **OPINION** |
| Respondent. | : |  |

**APPEARANCES:**

    DWAYNE HOWARD JENKINS, #17622-050
    FCI Fort Dix
    Fort Dix, NJ  08640
    Petitioner Pro Se

    KAREN H. SHELTON, Assistant U.S. Attorney
    PAUL J. FISHMAN, United States Attorney
    402 E. State Street
    Trenton, NJ 08608
    Attorneys for Respondents

**HILLMAN, District Judge**

Dwayne Howard Jenkins, an inmate currently confined at FCI Fort Dix in New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking restoration of good conduct time forfeited as a disciplinary sanction by the Bureau of Prison's ("BOP").  Respondents filed an Answer, together with the declaration of Tara Moran and relevant documents, arguing that the Petition should be dismissed as unexhausted and on the merits.  For the reasons expressed below, this Court will dismiss the Petition.

## I.   BACKGROUND

Petitioner challenges the loss of 41 days of earned good conduct time, imposed by the BOP as a disciplinary sanction for possession of a hazardous tool - a SIM card - in violation of code 108, while Petitioner was confined at FCI Manchester in February 2007.[1]  The report of the Discipline Hearing Officer dated March 30, 2007, relied on the following evidence:

> The DHO found you committed the prohibited act of possession of a hazardous tool (SIM card), code 108. The finding is based in part on the written statement of M Wagers, who attests that on 02-19-07 at approximately 6:15 PM, while conducting an area search of Manchester B Unit, Cell #132, housing you[,] he found a cell phone SIMS card located in your locked locker.  There were two mackerel cans with the wrappers taped together and only one had the sound that it contained mackerel.  Upon further inspection of the two cans, he found the SIMS card underneath the tab to the mackerel and the other can was empty and had tissue and plastic inside which appeared to be used to hid[e] contraband.  He located you and questioned you about the SIMS card.  You admitted to him it belonged to you.
>
> The DHO showed you and considered as evidence one photograph depicting one SIM card.  Your statement to the UDC that the SIMS card was yours.  Your statement to me during the DHO Hearing.  You stated, the incident

---

[1] To the extent that Petitioner challenges the loss of telephone privileges and disciplinary segregation, these claims are not cognizable under 28 U.S.C. § 2241 because they do not affect the fact or duration of Petitioner's confinement. See Ganim v. Fed. Bureau of Prisons, 235 Fed. Appx. 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. Appx. 551 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 242 n.5 (3d Cir. 2005).  Alternatively, while the Due Process Clause protects against the revocation of good conduct time, it does not protect against loss of telephone use or 30 days of disciplinary confinement.  See Sandin v. Conner, 515 U.S. 472 (1995); Torres v. Fauver, 292 F. 3d 141, 150-51 (3d Cir. 2002).

> report is true.  I had possession of the SIMS card.  I did not use it.
>
> Therefore, the DHO finds the above listed evidence supports you committed the prohibited act of possession of a hazardous tool (SIMS card), code 108.

(Dkt. 6-1 at 26.)

Jenkins challenges the loss of good conduct time on the following grounds:  (1) "[t]he failure to provide this Petitioner with notice that the punishment for the charged conduct had been increased from a moderate level violation to a severe level violated due process since this increase altered the legal consequences of the act thus affecting good time credits" (Dkt. 1-2 at 6); (2) the inclusion of possession of a SIM card as a violation of Code 108 violates the Administrative Procedures Act (Dkt. 1-2 at 11); (3) Code 108 is unconstitutionally void because it did not clearly prohibit possession of a SIM card; and (4) BOP violated Petitioner's right to equal protection by charging other prisoners who possessed cell phones with a lesser disciplinary charge, Code 305, with lesser sanctions.

The BOP filed an Answer, declaration and exhibits, arguing that the Petition should be dismissed as unexhausted and on the merits.

## II.  DISCUSSION

### A.  Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

>(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions
>
>. . . .
>
>(c) The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of sentence-reducing good conduct time on constitutional grounds. See Muhammad v. Close, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [and] requests for relief turning on circumstances of confinement may be presented in a § 1983 [or Bivens] action"); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991).

B. Administrative Exhaustion

Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). Administrative exhaustion

4

promotes the following goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Moscato v. Federal Bureau of Prisons, 98 F. 3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement."  28 C.F.R. § 542.10(a).  An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form.  See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal. Id.  The regulations further provide that the Warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and

the General Counsel shall respond within 40 calendar days.  See 28 C.F.R. § 542.18.  The regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level.  Id.

In this case, the BOP filed the declaration of Tara Moran who avers that Jenkins did not pursue administrative relief challenging the disciplinary sanction for violation of code 108.  As Jenkins did not file a reply to the Petition, he has not argued (or shown) that exhaustion would be futile or that the purposes of exhaustion would not be served in his case.  This Court sees no reason to excuse Petitioner's failure to exhaust administrative remedies and will dismiss the Petition as unexhausted.  See Wilson v. Strada, 2012 WL 1151030 (3d Cir. Apr. 9, 2012).

C.  Due Process Claims

Alternatively, this Court will consider the merits.  Jenkins argues that his right to due process was violated because he received no notice that the penalty for possession of a SIM card had increased from a moderate disciplinary code violation of code 305 to a disciplinary violation of the greatest severity under code 108.  He also contends that the increase in the penalty was not in compliance with the Administrative Procedures Act and he therefore received no notice of the penalty increase.

BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include code 108, defined as follows: "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13, Table 3. The BOP's interpretation of its own regulation is "controlling . . . unless it is plainly erroneous or inconsistent with the regulation." Chong v. Dist. Dir., I.N.S., 264 F. 3d 378, 389 (3d Cir. 2001). The BOP's definition of hazardous tool to include a cell phone SIM card is not plainly erroneous or inconsistent with BOP regulations. See Hicks v. Yost, 377 Fed. App'x. 223 (3d Cir. 2010) (BOP's definition of hazardous tool in code 108 to include a cell phone is not plainly erroneous or inconsistent with BOP regulations); McGill v. Martinez, 348 Fed. App'x 718 (3d Cir. 2009) (where officer found a cell phone and a charger in petitioner's cubicle, BOP did not violate due process or abuse its discretion in sanctioning him 40 days of good conduct time for possession of hazardous tool, code 108); Robinson v. Warden, FCI Fort Dix, 250 Fed. App'x 462, 464 (3d Cir. 2007) ("The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous

7

or inconsistent with BOP regulations, see Chong v. Dist. Dir., I.N.S., 264 F. 3d 378, 389 (3d Cir. 2001), and Robinson's conduct clearly falls within Code 108").

Moreover, the Third Circuit recently rejected the due process and APA claims which Jenkins raises in Ryan v. Scism, 2012 WL 1111323 (3d Cir. 2012). In Ryan, the Third Circuit ruled:

> The APA requires that general notice of the proposed regulation be published in the Federal Register and that interested persons be given an opportunity to comment on the proposed regulation. 5 U.S.C. § 553. The APA applies only to legislative rules, rules that impose new duties upon the regulated party. PAC 108, however, is an interpretive rule, and therefore the APA does not apply . . . . BOP acted within its authority in interpreting PAC 108, and Ryan has not shown that BOP's interpretation that the possession of cellular phone is a prohibited act under PAC 108 is plainly erroneous or inconsistent with the regulation.

Ryan v. Scism, 2012 WL 1111323 (3d Cir. 2012) (citations omitted).

Jenkins further argues that code 108 is unconstitutionally void for vagueness. A regulation is void for vagueness if it (1) "fails to provide people or ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). In Ryan, the Third Circuit rejected Ryan's claim that code 108 is void for vagueness, finding that "[o]ne can readily infer from the language of PAC 108 that a [SIM card and] cellular phone

would be among those tools hazardous to institutional security and likely to be used in an escape or escape attempt." Ryan, 2012 WL 1111323 at *2.

D. Equal Protection

Jenkins also contends that the BOP violated his right to equal protection by charging other prisoners who possessed cell phone SIM cards with violation of code 305, a lesser disciplinary charge.

The Equal Protection Clause requires that all people similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Whitus v. Georgia, 385 U.S. 545, 550 (1967). "Thus, to prevail under the Equal Protection Clause, [Petitioner] must prove that the decisionmakers in *his* case acted with discriminatory purpose." McCleskey, 481 U.S. at 292.

The problem with Petitioner's equal protection claim is that he has alleged nothing to indicate that his disciplinary sanction was the result of purposeful discrimination. Accordingly, his equal protection claim fails. See Ryan, 2012 WL 1111323 at *3 (holding that BOP did not violate equal protection by charging other inmates who possessed a cell phone with a lesser charge);

9

Millard v. Hufford, 2011 WL 681091 (3d Cir. Feb. 28, 2011) ("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination . . . . Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim").

### III. CONCLUSION

For the reasons set forth above, the Court dismisses the Petition for a Writ of Habeas Corpus.

                                     s/ Noel L. Hillman
                                      **NOEL L. HILLMAN, U.S.D.J.**

Dated:    June 15 , 2012

At Camden, New Jersey

10